Thank you. Good morning, Your Honor, and may it please the Court, Daniel Winnick, for the Government, and I'll try to reserve three minutes for rebuttal. The District Court awarded Relator a million-dollar share of Medicare overpayments that the Government had recouped through an audit conducted by a recovery audit contractor known as ARAC. That award should be reversed for two independent reasons, either of which suffices for a ruling in our favor. First, ARAC was auditing defendants for exactly the misconduct at issue in Relator's suit, so the preexistence requirement for an alternate remedy share is not met. And second, even if the QTAM action had preceded the audit, the audit didn't preclude a QTAM recovery, even as to the very claims that were the subject of the audit. Unless the Court would prefer otherwise, I'll start with preexistence and then turn to preclusion. I have a question. Your time is limited, so if I could go ahead and ask you a question, Mr. Winnick, and also a hypothetical regarding what you have been referring to as the preexistence requirement in your briefing here today. If you can assume between October 2010 and May 2012, the health data audited a single claim for renown involving a false inpatient outpatient billing and recovered only $100. Under those facts, would the government have chosen the alternate proceeding, the audits before Guardiola filed her QTAM action in June of 2012? I think that would be a much closer call, Your Honor. And the reason I say that is that if it were only a recruitment as to a single claim for payment, as opposed to a sort of continuous stream of document requests under the issue, then it might be harder to say that the audit was a continuous process begun in 2010 and continuing through and after the filing of the QTAM action. But here, as I think the hypothetical is intended to draw out, there was a continuous stream of document requests. It doesn't make any sense to look at the audit as sort of on a discrete request basis. The only basis for which the district court sort of chose to break the audit at the time of the filing of the QTAM action and look at the subsequent audit requests as satisfying the preexistence requirement is that the district court concluded that the government has a duty when a QTAM action is filed to stop an ongoing audit in its tracks and proceed instead in the twice, once to the relator and again to the RAC for any recovery. And there's just no basis to find such a duty either in the text of the False Claims Act or in the purposes of the act. In your opinion, that would be a legal error, correct, by the district court? Correct. That's a legal error. What about the factual aspect, though? Because the district also said, hey, this was a different audit that you were pursuing after the QTAM action was filed. Different in nature is what I understood the district court to be saying. And don't we have to review that for substantial evidence? So a couple of points, Your Honor. First, I think if you look at page 10 of the excerpts of record, I think the basis of the district court's ruling is the error of law we were just discussing, the court finds these new document requests, which the government failed to suppress when it had the authority and ability to do so constitute a pursuit of the claim after the government had declined to intervene. So I do think that was the crux of the district court's analysis. That said, as to the rest of it, and I agree, there are other things in the district court's opinion you could look at as factual in nature. Even if those are reviewed for clear error, and we don't think they are, but even if they are, the same conclusion follows. I mean, the district court's squared with the record under any standard of review. I mean, we know from the party stipulation exactly which issue codes in the audit requests overlapped with the issues in this QTAM action. There is a spreadsheet in the record that shows the pre-suit audit requests with those issue codes. There's another spreadsheet that shows the post-suit audit requests with those issue codes. They're all the same. So there's just no basis for concluding to the extent the district court did that as a factual matter, the RAC wasn't pursuing the same audit as to the issues in this QTAM action, both before and after. So I have a question about that. This isn't a scenario where the audit happens and the parties agree to a multi-year period. My understanding is it wasn't at the outset, you're going to do this audit for 10 years or whatever. Instead, it's renewed periodically through these document requests, right? Well, so it's renewed. The auditor's contract is renewed in the sense that at CMS, the government agency re-ups this particular audit contractor to fill the RAC role for this region for another year. And I mean, each particular audit request is in a sense a new action by the auditor, but neither will later. So if that's true, then why is it that the figuring out whether an alternative remedy is being selected? So the answer, Your Honor, is that those renewals do not reflect what is important for the alternate remedy provision, which is the government's choice as to how it is going to pursue a particular set of allegations of misconduct. All the government is doing when it renews the HDIs, the RAC in this case's contract for another year, is it's saying the RAC function in this region of the country is going to be performed for the next year by HDIs and some other company. The government doesn't micromanage what RACs are doing. The only thing the government approves with respect to the RAC's sort of substantive pursuit of a given audit is the new issue that the RAC has proposed. The government did that in October 2010. Everything after that is just the government's declining to disturb the RAC's ongoing course of conduct. We don't dispute that the government had factual ability to stop the RAC from auditing these entities or as to these issues. But there was no affirmative election by the government of an audit approach as opposed to an FCA approach to pursue this misconduct after, you know, the RAC began the audits of this new issue in 2010. And that's really what the alternate remedy provision is meant to address, right? It's meant to avoid the situation where the relator brings certain information to the government's attention. The government takes that information and then instead of pursuing an FCA recovery, which require it to compensate the relator, it takes the information and goes and decides to pursue some other type of recovery. Notably, what Congress was thinking of was an administrative recovery for fraud. And Congress just wanted to make sure that if the government did that, the relator would get the same cut of the administrative recovery as he or she does of the False Claims Act recovery. I'm sorry, Your Honor. Let me ask you because I'm concerned about your view of a preclusion. If Section 3730C5's text includes a preclusion requirement, as you advocate, it seems like the RAC audits would almost never entirely preclude a key TAM action from going forward because double damages and penalties would always be possible. Am I right on that? It's correct, Your Honor, that we don't regard RAC audits as preclusive key TAM actions and therefore we wouldn't think that they would ever satisfy the alternate remedy provision. Well, then would holding the Section 3730C5's text includes a preclusion requirement to open the door for abuse or potential abuse by the government? For example, could the government receive a new key TAM complaint, audit the defendants in a new key TAM complaint, recoup all the single damages, and never give the relator any portion of the single damages? A couple of points, Your Honor. First, in that scenario, we don't think there's an unfairness to the relator where the relator can still recover double damages and penalties for the government and at least a share of those for herself. But second, as we've noted, in the restitution context, the government has said, for example, we made this representation in this court in Van Dyke, that a relator may be entitled to a share of FCA liability calculated before rather than after an offset for a prior recovery by the government. That issue isn't presented here for a couple of reasons, one of which we think is that the preclusion requirement wouldn't be satisfied even if the relator gets only a share of double damages and penalties. But the other reason is the relator didn't actually pursue her FCA action as to the audited claims, and so there's no need to calculate for a share of the FCA recovery as to those claims. But I would note, and then I do hope to save a couple of minutes for rebuttal, I would just note that the court can avoid the preclusion issue entirely if it wants to do that by ruling solely on pre-existence. It need not reach those issues. You're almost out of time, but I'll give you a couple minutes. Thank you, Your Honor. Mr. Kreindler, you're muted. I made a mistake, Your Honor. I apologize. Good morning. May it please the court, my name is Mitch Kreindler, and I represent the relator Cecilia Guardiola, the whistleblower who filed the case that's before you today. In this case, the plain language of the False Claims Act, the facts of the case, and this court's controlling precedence all require that you affirm the district court ruling. So first, talking about the False Claims Act and its alternate remedy provision, it is clear that there is no pre-existence requirement in its text. There is no preclusion requirement in its text. It broadly refers to any alternate remedy, and it does not exclude remedies that are addressed to the same type of misconduct, which is what the government is urging here. Second, the record before the court, the discovery, the facts, the party's stipulation, which is important, and the district court's findings all demonstrate that after Ms. Guardiola filed this case, the government engaged in a disconnected series of discrete audit efforts authorized by one-year contracts and accomplished through dozens of ADRs, additional document requests, which is what the recovery audit contractor uses, to reclaim the proceeds that the government agrees were excluded from the settlement and the settlement amount because they were previously recovered by the government. The government says there's no evidence. The government says that the suit did not cause the government to act any differently in response to the hypothetical that was posed, but there is no evidence of the government decision-making here. We did speak to representatives of the RAC. Can I ask a question about that? Because my understanding had been that it was the same requests that were being made after that were being made before. Can you give us an example where it did change the government's behavior here? So I can't give you an example where it changed the government's behavior, but I can't tell you it didn't. So we signed a stipulation. But if the government is sending out its requests, as it has been doing for two years, and it's just continuing in that same process, which with all due respect, that seems to be why the government took a different approach after 2012. That would be important to me. Well, I think we're talking about two different things. So what the RAC was doing did not change as a result of this lawsuit. But what the RAC was doing was looking into a 260-page list of new issues, which is in the record before your honors. 260 pages of issues. There was testimony that once an issue gets on, once the issue is placed on the new issues list, it never comes off. So there were 260 pages of issues that the RAC was sending out requests on about every 45 days. The way they send them out, how they send them out varies depending on who the provider is. But in terms of the provider here, they were getting one every 40 days. And just to clarify, your position is that 260 pages of new issues was, in your opinion, prompted by the KETAM action? No, that 260 pages of issues was prepared by the RAC with its negotiations with the government. Those issues are an entirely separate issue. But if the government is going to have this court agree that the type of misconduct is excluded, then anything among those 260 pages would bar any kind of remedy for the relator. And in this case, each of those alternate remedies... The government's position is that's not entirely accurate because it wouldn't bar double or treble damages. Well, that's correct. But the alternate remedy provision doesn't say bars double or treble damages. It does bar the relator's recovery on the single damages, on the actual damages that the defendant incurs. And in this case, the government has agreed that the defendant would have been entitled to an offset for whatever money had previously incurred, or that had previously recovered. But to answer your question more clearly, each document request that the RAC sends out is based on a specific claim. They would send a document request that would list a certain number of claims to the provider. So the provider gets a list of claims for which they are asking for information. They are not saying to the provider, this is what we think is wrong. They are sending, send us more information about these claims. And so every time a document request goes out, the government is questioning specific claims. And those claims change every single time a document request goes out. And in this case, I believe there were 48 individual document requests that occurred after Ms. Guardiola filed her lawsuit. Let me, let me, I guess let me ask it at this point, because I want to just make sure I understand that, you know, the record on appeal includes a pre-June 2012 audit, you know, spreadsheet, a post-2012 audit spreadsheet. And each spreadsheet has the same three medical codes. And it seems like you believe the medical codes cover false, inpatient, outbilling post-June 2012, but you don't do so for the audits before June 2012. And I'm not quite sure how you reached that conclusion, especially in light of your stipulation. If I understand your Honor's question correctly, we're trying to be consistent in our point of view. We don't believe that the relator should be entitled to a portion of what the government recovered before the relator filed her KETAM case. However, after she filed her KETAM case, the alternate remedy provision kicks in. And it requires that the relator be treated the same, whether she's involved in the alternate procedure or not. But not if the government had already been doing that, that same, you know, investigation or had, you know, and that they were auditing for that already, then I'm not quite sure the to that. Well, if it was the same investigation, the government might have a better argument, Your Honor, but it wasn't the same investigation. Tell me how it wasn't in light of what the spreadsheets reflect and your stipulation. Well, the spreadsheets reflect individual claims and those individual claims, it doesn't reflect on the spreadsheet. And I would disagree with the government on this, but it doesn't reflect on the spreadsheet that it was tied to a specific issue. It does say, for instance, inpatient, but that just tells you that the claim was an inpatient claim. And in these cases, we went through with the district court a very, very specific identification of the claims that would be involved in the sampling procedure and within the defendant's liability. So that's to some extent is how the liability dollars that were determined through the stipulation were arrived at here. I'm going to ask this one more time because I want to make sure I understand your position. If we conclude that the subject matter was being addressed pre and post your client's lawsuit, is it your position that because post the lawsuit, the government came up with new specific claims, new billing incidents where they think they should claw back money, that in and of itself, the new claims, even though they're coming under the same topic, is an alternate remedy or triggers the alternate remedy? Yes, Your Honor, it is because in this particular instance, we have new contracts, new audits, new claims. And as the district court found, there was no ongoing audit. The district court soundly rejected that as a factual finding, which the government really has not tried to challenge here in which the clear error standard would require, I believe, the court to abide by the district court's finding in that regard. Do you defend the district court's position that the government's really the main the government's choice when once the key time action was filed was to was to stop issuing further requests and stop pursuing its claims? I would not, Your Honor. I think the False Claims Act is designed to favor the government. I think it allows the government a lot of leeway. I think the government can do what the government wants, but I think the alternate remedy provision is designed to protect the relator when the government intervenes in a case of between 15 and 25 percent of the proceeds that are recovered. When the government declines to intervene and the relator proceeds, that reward, Congress determined, jumps to 25 percent as a minimum and 30 percent as a maximum. And I find it very hard to believe that Congress was increasing the rewards in recognition of the and incentivizing the relator to move forward, and at the same time, Congress intended that the government could be removing from the equation proceeds of liability that would not factor in. Don't we look at the text of the statute here? It's Section 3730C5's text. It states that the relator shall have the same rights in an alternative proceeding as the relator would have had if the action had continued. And I'm trying to figure out as to what your interpretation is with those words, because it seems to state that the action does not go forward once the government chooses an alternative remedy. In your briefing, you gave one sentence to try to explain that in favor of your client. So what's your response? Do you have any cases interpreting 3730C5's language if the action had continued as the way you advocate? So the answer to that, Your Honor, is that the relator's action as to those claims did, was precluded, did stop, could not go forward as to those claims. And I think, as far as case law, I think Your Honor should look no further than Barajas. Sorry, how was it precluded? In your view, how did it not go forward? Well, we, the relator and her counsel, were not entitled to recover dollars for the claims that the government had already recovered. And we were not entitled to a share of that under the government's view. We could not go to the defendant and say, pay us money for these claims, because their response would be, we already paid the government, and so that's offset to our liability, as the government agrees it is. The only dispute is over whether or not the relator's entitled to a share of that. And in Barajas, as the government recognized, the Barajas court talked about how, talked about how what is precluded is the government's, the relator's FCA remedy. It doesn't say the FCA action. It says the remedy. And it's the claims for which the government had recovered money after her Keytan case was filed. I see that I'm over time. If you have any other questions, I'd be happy to address them. Can I ask a question? Go ahead, Judge Hensinger. Just quickly, if you're making a claim by claim argument, which you said a minute ago you are, at what point in the litigation did your client identify the claims that she wanted to recover for? Were each of those claims listed in the complaint? In the complaint, there were a number of very specific claims, hundreds of claims that we identified as being false within the False Claims Act. During discovery of the case, we obtained from Medicare lists of claims, you know, under certain parameters. And then we agreed with the defendant. We had a process where we agreed as to the specific claims that would fall within the case. And then once we agreed what those claims were, we then discovered that some of these claims had already been recouped by the government. And that's how we ended up here today. Thank you. Judge Nelson, do you have any other? So, Mr. Kriegler was able to go three minutes over, so I'll give you three minutes, Mr. Winant. Thank you, Your Honor. Just three quick points. One, the spreadsheets quite clearly show the issue being addressed in given audit requests. We'll just point the court to those in the record. One of them is at ER 302 to 312. The other is at 429 to 444. Can I ask a question about that? Because that's what I had initially thought as well. Although it is true that, I mean, it doesn't exactly go to the issues. It goes to the same information being sought, but it doesn't necessarily suggest that the government was sticking to the same issues pre-2012, post-2012. Or am I now getting abused on that? I think you may be, Your Honor, or else I don't understand the question. So, if you look at the two different spreadsheets side by side, there's a column in each spreadsheet that shows the issue on which the RAC is making the document request. And that's identified in the document request letter itself, which you can see some examples of. And so, what we know from the spreadsheets is that both before and after the filing of this QTAM action, the RAC was seeking information to recover overpayments for exactly the same misconduct that is at issue in this QTAM action. But I think Mr. Kriegler is saying there were new claims. Does that matter? No, Your Honor. Yeah, it doesn't matter. It's a continuous course of audit conduct. I mean, each claim is, you know, a claim for payment by a given hospital for Medicare reimbursement for a given patient. But what's important is that beginning in 2010 and extending to and through the filing of this QTAM action, the RAC was seeking to recoup overpayments to these defendants for exactly the misconduct across many patients that's at issue in this QTAM action. The second point I'd like to make, for that reason, you heard relators say the RAC's behavior didn't change after this QTAM action was filed. And so, there's just no way here to conclude that the pre-distance requirement is satisfied unless you accept the district court's theory that the government has a duty once the QTAM action is filed to stop the audit in its tracks. That's an unsound conclusion for the reasons we've explained, and I didn't hear a relator mount particular defense. Can I ask a question? I probably should have asked a opposing counsel about this, but is the relator still seeking claims here under the theory that they can get double in trouble damages, or have they just said that's not worth it and we don't want any of that, we're just going to go after what the government can cover? So, the QTAM action was settled back in 2016. So, they would have to file a new action. They could theoretically file a new action seeking double in trouble damages for these same claims. Well, the settlement has a release in it, so I actually don't think that. All right. And the third point, just briefly, you heard Mr. Frangler say that the government undermined its position here as if by taking a single recoupment in the audit, it precluded multiple damages and penalties under the SCA. That's just not right. Relator could have pursued SCA liability in this action, even as to the audited claims. She could have gotten multiple damages and penalties from the government, and she did, and having made that choice, she can't now take a million-dollar cut of the government's recovery from an audit it was pursuing long before she sued. Unless there are further questions, we'd ask that the district court's award will later be reversed. Thank you both. Mr. Winnick, Mr. Kreinler, I appreciate your presentations here today. The case of Cecilia Guardiola versus the United States of America is now submitted. Thank you very much. Thank you.
judges: Murguia, Nelson, Hunsaker